United States District Court
Southern District of Texas
**ENTERED**
August 05, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOE ROBLES, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 2:15-CV-495 |
| | § | |
| ARANSAS COUNTY SHERIFF'S | § | |
| DEPARTMENT, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND GRANTING PLAINTIFFS' REQUEST TO AMEND COMPLAINT

Pending is a motion to dismiss for failure to state a claim filed by Defendants, Aransas County, Texas, Matthew Campbell, and Anthony Ciarletta (D.E. 11). Plaintiffs, Joe Robles and Elvira Robles, filed a response and Defendants filed a reply. (D.E. 19, 23). At a hearing held on May 20, 2016, the Court dismissed some of Plaintiffs' claims and the remainder are addressed in this Order. The Court sua sponte reconsiders the dismissal of Elvira Robles's First Amendment claim and it is also addressed in this Order. For the reasons discussed below, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. In addition, Plaintiffs' request to amend the complaint is GRANTED.

## JURISDICTION AND VENUE

This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

1

## BACKGROUND

Plaintiff Joe Robles (Mr. Robles), who was 68 at the time of the incident on which this lawsuit is based, owns rental property in Aransas County, Texas, consisting of a house in which rooms are rented to individuals.  In December 2013, Mr. Robles asked two tenants to move from the rental property and one of them moved shortly thereafter. The remaining tenant, Andrea LaRue (LaRue), stayed on the property.  On December 25, 2013, Mr. Robles and his wife, Elvira Robles (Mrs. Robles), entered the rental property to clean it and prepare it for new tenants.

After entering the property, Mr. Robles became concerned because money and property appeared to be missing from one of the rooms.  Mr. Robles called the Aransas County Sheriff's Department and reported a theft.  Defendant Matthew Campbell (Campbell), an Aransas County deputy, was dispatched to the property and talked to LaRue.  It appeared to Mr. Robles that Campbell and LaRue were acquainted socially and at one point, they had a private conversation from which they excluded Mr. Robles.

Campbell told Mr. Robles that he did not think Mr. Robles had enough information to file a criminal complaint against LaRue.  When Mr. Robles insisted on filing a complaint, Campbell became agitated and refused to accept it.  Campbell told Mr. and Mrs. Robles that if he heard of any more issues between them and LaRue, Mr. and Mrs. Robles would both be arrested and jailed.

A week later, on December 31, 2013, LaRue and a relative began moving things out of the rental property and into a truck.  Mr. Robles went to the property to observe the move.  LaRue called 911 and Campbell responded to the dispatch.  Campbell was

2

wearing a body camera and much of what happened next is recorded on video.  Campbell entered the house yelling for Mr. Robles.  He went upstairs and LaRue told him that Mr. Robles had gone outside.  Campbell stepped outside onto a second-floor landing and saw Mr. Robles downstairs.  Campbell yelled for Mr. Robles to take his hands out of his pockets, although it did not appear that he had his hands in his pockets or that he was holding anything.

Campbell ran downstairs, took Mr. Robles to the ground, and handcuffed him. Campbell told him to stop kicking and resisting, although he appeared to be still and compliant.  Mr. Robles's legs are not seen on the video.  Campbell arrested Mr. Robles for assault and transported him to the county jail.

Defendant, Deputy Anthony Ciarletta (Ciarletta) arrived at the property after Mr. Robles had been handcuffed, but before he was placed in the police vehicle.  Ciarletta prepared a report of the incident.

Mr. Robles hired an attorney to represent him on the assault charge and appeared for trial every time the case was set.  Neither Campbell nor LaRue ever appeared for trial and eventually, the charges against Mr. Robles were dismissed.  Mr. Robles claims to have suffered physical injury to his arms, shoulder, and torso during the arrest.

Mr. and Mrs. Robles allege that they asked a representative of Aransas County to conduct an internal investigation of the incident, but their request was refused because they wanted to make an audio recording of the interview.  Mr. Robles also complained in person to the Aransas County Sheriff and the Aransas County Judge, but no investigation of the incident was ever made.

3

Based on the foregoing, Mr. and Mrs. Robles allege violations of their rights under the First, Fourth, Fifth, and Fourteenth Amendment of the Constitution.  In addition, Mr. Robles alleges a cause of action for assault and battery under state law against Campbell and alleges that Ciarletta acted in concert with Campbell and is thus jointly liable for the assault.

Defendants argue that Plaintiffs have failed to state a claim for relief.  Defendants attached several exhibits to their motion to dismiss:  (1) an audio recording of a 911 call made on December 31, 2013; (2) a DVD of the recording made by Campbell's body camera on the day he arrested Mr. Robles; (3) a DVD of the recording made by Ciarletta's body camera on the day Mr. Robles was arrested; (4) a victim statement made by LaRue; (5) a witness statement made by Nicholas St. Ours; (6) an audio recording of a 911 call made on December 25, 2013; (7) a report of an alleged theft made by Mr. and Mrs. Robles on December 25, 2013; (8) a written summary of the 911 call made by LaRue on December 31, 2013;  (9) an incident report prepared by Ciarletta; (10) an incident report prepared by Campbell; and (11) an arrest report for Mr. Robles prepared by Ciarletta.

Defendants argue that the Court has discretion to consider the submitted materials and ask that the motion to dismiss be converted to a motion for summary judgment if the Court decides to consider them.  Plaintiffs object to inclusion of the extraneous evidence in the motion to dismiss.

At the hearing held on May 20, 2016, the Court declined to convert the motion to dismiss into a motion for summary judgment, but stated that it would consider the

exhibits attached to the motion to dismiss that were referred to in the complaint.  The Court dismissed Mr. Robles's assault and battery claims pursuant to § 101.106 of the Texas Civil Practice & Remedies Code.  The Court also dismissed the false arrest, excessive force, and First Amendment claims against Ciarletta.  Although the Court dismissed Mrs. Robles's First Amendment claim (her only claim), the Court now reconsiders that dismissal and retains that claim.  The remaining claims as well as Mrs. Robles's First Amendment claim are discussed below.

## APPLICABLE LAW

### A.  Motion to Dismiss

A motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) tests the formal sufficiency of the statement of a claim for relief.  It is not a procedure for resolving disputes about the facts or the merits of a case.  In ruling on a motion to dismiss, the court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to prove the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .  Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the assumption are true (even if doubtful in fact) . . . .

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-555 (2007) (internal citations and quotations omitted).  In *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Supreme Court held:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Twombly*], 550 U.S. at 570, 127 S.Ct. at 1955.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556, 127 S.Ct. 1955.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.*  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557, 127 S.Ct. 1955.

Accordingly, in order to survive a motion to dismiss, a plaintiff's complaint must allege enough facts to show that a plausible claim for relief exists on the face of the pleading.

In determining whether to grant a motion to dismiss, the court must not go outside the pleadings and must accept all well-pleaded facts as true, looking at them in the light most favorable to the plaintiff.  *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).  The Fifth Circuit has recognized one limited exception to this rule.  In *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000), the Fifth Circuit approved a district court's consideration of documents attached to a motion to dismiss where the plaintiff did not object to their consideration and the documents were central to the plaintiff's claim.  *Id.*  The court stated:

> We note approvingly, however, that various other circuits have specifically allowed that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).  In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated.

*Id.; see also In re Katrina Canal Beaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) ("[B]ecause the defendants attached the contracts to their motion to dismiss, the contracts were referred to in the complaints, and the contracts are central to the plaintiffs' claims, we may consider the terms of the contracts in assessing the motions to dismiss.").

In *Burkett v. City of Haltom City*, 2015 WL 3988099 at *3, n. 4 (N.D. Tex. 2015), a video recording of an incident was considered by the court in a motion to dismiss because it was referenced in and was a central part of the plaintiff's complaint.  The plaintiff had filed a civil rights claim based on an alleged unlawful arrest and use of excessive force by police officers.  The plaintiff referred to a video of her arrest in the complaint and the court cited *Collins* when considering it.  The court dismissed the excessive force claims based on the video.  *Burkett*, 2015 WL 3988099 at *3; *but see Crowe v. Hoffman*, 2013 WL 357006 at *1 (E.D. La. 2013) (court converted motion to dismiss to motion for summary judgment before considering surveillance video and granting judgment in favor of defendants).

In the instant case, Plaintiffs' complaint references the video recorded by Campbell's body camera and the Ciarletta report, both of which are central to the claims made.  That evidence will thus be considered in ruling on the motion to dismiss.  The complaint briefly references LaRue's 911 call, but that call is not central to Plaintiffs' claims so it will not be considered.  The other exhibits submitted by Defendants are not referenced in the complaint so they will not be considered either.

**B.  42 U.S.C. § 1983 Cause of Action**

To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of the Constitution or of federal law and that the violation was committed by someone acting under color of state law.  *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252-53 (5th Cir. 2005).  Here, there is no question that Campbell and Ciarletta were acting under color of state law.  Thus, the question for the Court is whether Plaintiffs have alleged facts to show a plausible claim for relief for violations of the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution.

Claims under § 1983 may be brought against persons in their individual or official capacities or against a governmental entity.  *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009) (*citing Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997)).  Personal-capacity suits seek to impose liability on a government official as an individual, while official-capacity suits generally represent another way of pleading an action against an entity of which the official is an agent.  *Id.* (citing *Monell v. Dept. of Soc. Serv's. of City of New York*, 436 U.S. 658, 690, n. 55 (1978)).  In a personal-capacity suit, the individual defendant may assert personal immunity defenses such as qualified immunity.  Campbell and Ciarletta were sued in their personal capacities and both assert qualified immunity defenses.

**C.  Qualified Immunity**

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

8

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc).   To discharge this burden, a plaintiff must satisfy a two-prong test.   *Atteberry,* 430 F.3d at 251-252.   First, he must claim that the defendant committed a constitutional violation under current law.   *Id.*   Second, he must claim that the defendant's actions were objectively unreasonable in light of the law that was clearly established at the time of the actions about which he complained.   *Id.*

While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer mandatory.   *Pearson*, 555 U.S. at 236 (receding from *Saucier v. Katz*, 533 U.S. 194 (2001)).

D.  **Fourth Amendment Claims**

**(1)  Wrongful Arrest**

Mr. Robles alleges that Campbell violated his right to be free from unlawful search and seizure when he entered Mr. Robles's property without probable cause or reasonable suspicion of criminal activity and arrested him.   He asserts that Campbell arrested him because Campbell was angry about their encounter the previous week when Mr. Robles wanted to file a criminal complaint against LaRue.

The Fourth Amendment requires that a warrantless arrest by an officer be supported by probable cause. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "Probable cause exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'" *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655-656 (5th Cir. 2004) (quoting *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001)). Thus, to state a claim of unlawful arrest, Mr. Robles must allege facts showing that, at the time of his arrest, Campbell lacked probable cause to believe that Mr. Robles committed an assault.

Mr. Robles asserts that Campbell's body camera video shows that Campbell entered the front door of the house yelling, "where is he [Robles]?" and then ran up the stairs with his gun drawn. When LaRue directed Campbell to an exterior stairway leading to the rear of the property, Campbell stepped outside with his pistol drawn and saw Mr. Robles. The video then shows Campbell running down the stairs, shoving Mr. Robles to the ground, and handcuffing him (D.E. 1 at p. 4).

A review of the video shows that when Campbell entered the house and asked where Mr. Robles was, LaRue was crying and said that Mr. Robles had tried to throw her over the rail on the second floor. (DVD recording at 15:16:52-55). A few minutes later, Campbell tells Mr. Robles that the dispatcher stated that LaRue accused Mr. Robles of trying to throw her over the balcony. (DVD recording at 15:22:56). A reasonable person

hearing that Mr. Robles had tried to throw someone over a second floor rail or balcony would have probable cause to believe that Mr. Robles had committed an assault.[1]

Even if Campbell harbored ill feelings toward Mr. Robles because of their previous encounter, the events that transpired moments before the arrest support the conclusion that a reasonable person would have had probable cause to believe that Mr. Robles committed an assault.  Mr. Robles has failed to state a claim for wrongful arrest. Accordingly, the Fourth Amendment false arrest claims are DISMISSED.

**(2) Excessive Force**

Claims of excessive force brought by arrestees are analyzed under the Fourth Amendment and its reasonableness standard.   Once an arrest is complete, pretrial detainees are protected by the due process clause of the Fifth or Fourteenth Amendments. Although it is not always clear where an arrest ends and pretrial detainment begins, the Fifth Circuit has held that the Fifth and Fourteenth Amendments begin to protect persons after the incidents of arrest are completed, after the person has been released from the arresting officer's custody, and after the person has been in detention awaiting trial for a significant period of time.  *Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th Cir. 1998).  Mr. Robles's claim of excessive force during his arrest is analyzed under the Fourth Amendment.

---

[1] A person commits the offense of assault if he intentionally, knowingly, or recklessly causes bodily injury to another, threatens imminent bodily injury to another, or causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.  Tex. Penal Code § 22.01(a).

To state a claim for excessive force, a plaintiff must plead (1) that he has suffered an injury; (2) the injury resulted directly and only from a use of force that was clearly excessive; and (3) the excessiveness was clearly unreasonable. *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005). Mr. Robles alleges that the force used against him caused him to suffer physical injuries which have persisted and are unlikely to heal completely, as well as anxiety, loss of sleep, depression, sadness, and fear.

Regarding the reasonableness of the force used, courts balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. *Graham v. Connor*, 490 U.S. 386, 396 (1989). Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, it requires careful attention to the facts and circumstances of each particular case. *Id.* Factors considered include (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.* The reasonableness of the force must be determined from the perspective of a reasonable officer on the scene and not with the advantage of hindsight. *Id.* "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-397.

The reasonableness inquiry is an objective one. The question is whether the officer's actions are objectively reasonable in light of the facts and circumstances. The

12

officer's intentions during the arrest are not part of the objectively reasonable analysis. *Id.* at 397.  "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id.*

Mr. Robles asserts and the video confirms that when Campbell confronted Mr. Robles, he shoved him to the ground and handcuffed his hands behind his back (DVD at 15:17:46).  Campbell shouted at Mr. Robles to stop kicking, quit pulling, and stop resisting, although in the limited view provided by the body camera, Mr. Robles appears to be lying passively on the ground (DVD at 15:17:50 to 15:18:04).  Mr. Robles tells Campbell that he was not doing anything and he calmly says, "It's all right, sir; it's all right." (DVD at 15:18:00).

In addition, the video shows that when Campbell first saw Mr. Robles, he shouted at him to get his hands out of his pockets.  By the time the camera focused on Mr. Robles, his hands were showing so it is unclear whether he had had his hands in his pockets.  As Campbell walked down the stairs, he told Mr. Robles multiple times to turn around, but Mr. Robles continued to face him and talk to him until Campbell turned him around and took him to the ground (DVD at 15:17:30 to 15:17:44).  Campbell then asked, "Where is that pocket knife that was in your hand?"  And Mr. Robles replied that he only had keys (DVD at 15:18:14).  Campbell left Mr. Robles on the ground while he searched for a knife, which he did not find (DVD at 15:18:34 to 15:19:12).  He then returned to Mr. Robles and helped him to his feet (DVD at 15:19:17 to 15:19:20).

Looking at the considerations outlined in *Graham*, Mr. Robles has pleaded facts sufficient to survive Defendants' motion to dismiss.  The video does not conclusively show that Mr. Robles's claims are not plausible on their face.  Additionally, Mr. Robles has pleaded facts sufficient to overcome qualified immunity on his excessive force claim because he has set forth facts showing that it is plausible that Campbell used excessive force against him.  And it is well-established that the Fourth Amendment protects arrestees from the use of excessive force by law enforcement officers during an arrest. *Gutierrez*, 139 F.3d at 452.  Accordingly, Defendants' motion to dismiss Mr. Robles's excessive force claim against Campbell is DENIED.

**E**.  **First Amendment Claims**

Plaintiffs allege that Campbell violated their First Amendment right to free speech and to petition the government by threatening to arrest them if they made a criminal complaint against LaRue and by initially refusing to take the complaint.  Mr. Robles also alleges that Campbell arrested him in retaliation for exercising his First Amendment right which included complaining to the Aransas County Sheriff's Department (D.E. 1, p. 12-13).  Plaintiffs contend that when Mr. Robles told Campbell that he wished to file a complaint against LaRue, Campbell became agitated and refused to accept the complaint.  And Campbell told Plaintiffs that if he heard of any more issues between them and LaRue, Campbell would arrest Plaintiffs and "throw them both in jail."

The act of making the threat raises First Amendment concerns.  Filing a police report implicates speech that is protected under the right-to-petition clause of the First Amendment. *Meyer v. Bd. of Cty. Com'rs of Harper Cty., Okla.*, 482 F.3d 1232, 1243

14

(10th Cir. 2007); *Tilley v. Peaster Indep. School Dist.*, No. 4:12-CV-408-Y, 2013 WL 1890376 at *3 (N.D. Tex. 2013); *see also Rossi v. City of Chicago*, 790 F.3d 729, 734 (7th Cir. 2015) (First and Fourteenth Amendments protect rights of individuals to seek redress for claims that have a reasonable basis in law and fact).  First Amendment rights may be violated by the chilling effect of governmental action that falls short of a direct prohibition against speech.  *World Wide Street Preachers Fellowship v. Town of Columbia*, 245 Fed. Appx. 336, 343 (5th Cir. 2007) (citing *NAACP v. Button*, 371 U.S. 415, 433 (1963) and *Aebisher v. Ryan*, 622 F.2d 651, 655 (2nd Cir. 1980)).  The question is whether the plaintiff has alleged facts showing that the defendant made statements that could be interpreted as intimating that some form of punishment or adverse regulatory action would follow a complaint to law enforcement.  *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009) (citing *Okwedy v. Molinari*, 333 F.3d 339, 343 (2nd Cir. 2003) (per curiam)).

Based on this standard, Plaintiffs have stated a First Amendment claim against Campbell based on Campbell's refusal to take the complaint and the threat of retaliation should Plaintiffs pursue it.  And Plaintiffs have pleaded sufficient facts to overcome qualified immunity on this issue.  They have alleged a First Amendment violation and the law is well-established in this regard.  Accordingly, Defendants' motion to dismiss Plaintiffs' First Amendment claims against Campbell is DENIED.

**F**. **Fifth and Fourteenth Amendment Claims**

Mr. Robles alleges that Campbell and Ciarletta violated his due process rights under the Fifth and Fourteenth Amendments by generating false police reports and false

charges against him.  During the motion hearing, the Court asked counsel to clarify Mr. Robles's due process claims under each amendment.  He has failed to allege facts implicating the Fifth Amendment which applies only to violations of constitutional rights by the United States or a federal actor.  *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000).  Because Mr. Robles is not suing any federal actors, any claims based on the Fifth Amendment are DISMISSED.

### (1) Filing False Police Reports

Individuals have a due process right "not to have police deliberately fabricate evidence and use it to frame and bring false charges against [them]."  *Cole v. Carson*, 802 F.3d 752, 771 (5th Cir. 2015).  Mr. Robles alleges that Ciarletta violated his Fourteenth Amendment due process rights when he prepared a written report falsely describing what happened when Mr. Robles was arrested in an effort to cover up the false arrest and Campbell's use of excessive force.  Mr. Robles asserts that Ciarletta was not present and had no personal knowledge of the incident and that any accounting of it by him is false.

Mr. Robles fails to describe any facts to support his assertion.  Rather, he makes only the conclusory allegation that Ciarletta generated a false report (D.E. 1 at p. 6).  Moreover, a review of Ciarletta's incident report shows that he interviewed LaRue and St. Ours and noted their description of the events in his report.  The only direct observation Ciarletta made was of redness and an abrasion to LaRue's right elbow (D.E. 11-8 at pp. 3-4).  Nothing in the report indicates that Ciarletta fabricated a false report of the incident, or did anything other than record witness statements.  Because Mr. Robles made only a conclusory allegation and Ciarletta's incident report offers no direct observations of the

incident, the due process cause of action against Ciarletta based on this allegation is DISMISSED.

Mr. Robles asserted in his complaint that Campbell did not file a report of the incident and arrest. (D.E. 1 at p. 6). However, there were allegations in the complaint of false reports and trumped up charges by Campbell (D.E. 1 at pp. 7, 11, 14). Defendants provided a report by Campbell in their motion to dismiss. (D.E. 11-8 at pp. 5-6). In his response to the motion, Mr. Robles states that the report was not previously available to him and it contradicts the video so the report is false. (D.E. 23, p. 4). As stated above, the Court will not consider the Campbell report because it was not part of the complaint. If Mr. Robles believes that he suffered a constitutional violation based on Campbell's report, he may assert that cause of action in an amended complaint.

## G. Aransas County Liability

A county can be found liable under § 1983 only where the county itself causes the constitutional violation at issue. Respondeat superior, or vicarious liability, will not attach under § 1983. *Monell*, 436 U.S. at 658. A county can be held liable for the actions of a tortfeasor in its employment when it is the "execution of [the county's] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, [that] inflicts the injury." *Id.* at 694. Additionally, inadequate police training or supervision can be the basis of county liability under § 1983 if the failure to train amounts to deliberate indifference to the constitutional rights of persons with whom the police come into contact. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

Here, Plaintiffs allege that Aransas County has customs, policies, practices, and procedures which make it responsible for the claims asserted against Ciarletta and Campbell.  In addition, Plaintiffs allege that Aransas County has failed to discipline or train officers, lacks proper policies to prevent constitutional violations, hires unqualified deputies, and perpetuates a "code of silence" regarding officer misconduct (D.E. 1 at p. 15–18).  Plaintiffs further allege that Aransas County, through Sheriff Mills, violated their First Amendment rights by refusing to conduct an internal affairs investigation of Campbell and Ciarletta (D.E. 1 at p. 13, para. 43).

To survive a motion to dismiss on an unconstitutional custom or practice claim, Plaintiffs must point to factual allegations sufficient to allow a reasonable inference that there was a pattern of misconduct involving similar acts.  *See Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010) ("A customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct.").  Plaintiffs' factual allegations regarding Aransas County's liability are conclusory and insufficient to allow such an inference.  *See Speck v. Wiginton*, 606 Fed. App'x 733 (5th Cir. 2015) (plaintiff failed to state a claim for failure to train where he alleged no fact about what training the defendant provided or failed to provide, alleged no pattern of constitutional violations by untrained employees, and pointed only to a single alleged incident of misconduct).  Plaintiffs' claims against Aransas County are dismissed without prejudice for failure to state a claim.   Plaintiffs are granted leave to amend their

complaint and incorporate additional factual allegations as outlined in their response to Defendants' motion to dismiss.

## CONCLUSION

The Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Based on the Court's rulings at the May 20th hearing and in this Order, the Court ORDERS as follows:

1. All claims brought against Defendant Ciarletta are dismissed with prejudice.

2. The assault and battery claims are dismissed with prejudice.

3. The Fifth Amendment claims are dismissed with prejudice.

4. The Fourth Amendment claim based on wrongful arrest is dismissed with prejudice.

5. Plaintiff Joe Robles may proceed on his Fourth Amendment excessive force claim brought against Defendant Campbell.

6. Both Plaintiffs may proceed on their First Amendment claims brought against Defendant Campbell.

7. Plaintiff Joe Robles is granted leave to amend the complaint to allege Fourteenth Amendment claims based on false reports against Defendant Campbell if he believes the facts support such a claim.

8. The claims against Defendant Aransas County are dismissed without prejudice. Plaintiffs are granted leave to amend their complaint regarding allegations against Aransas County.

9.  The amended complaint shall be filed within 14 days.  If Defendants wish to file
    an amended motion to dismiss based on the amended complaint, they may do so
    within 14 days of being served the amended complaint.

ORDERED this 5th day of August, 2016.

_Nelva Gonzales Ramos_
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE